Good morning, Your Honors. Gary Finn for the petitioner, Gilberto Acosta. Your Honors, when this Court made its decision in Garfious-Rodriguez back in 2012, it indicated that the finding in that case was based on the specific facts and timing of the situation. It was limited to the facts of that case. In this case, Your Honors, we have a completely different factual situation. My client filed for adjustment of status after this Court had already ruled twice that he was eligible to do so if he was granted permission to reapply for admission to the United States. He was in removal proceedings at the time. He didn't just wake up one morning and decide, you know, the law is pretty much in flux, but I'm going to go ahead and file for adjustment of status. He was invited to apply by an immigration judge in removal proceedings who then decided that he was eligible and granted his application. So my client's reliance on the state of the law at that time was very, very reasonable. The government, in its brief, argues that the law at that point was in flux, was kaleidoscopic, as they say on page seven of their brief, but in reality, the law was pretty well defined. When you practice immigration law, as I do, you know there are certain things that are for sure, and one thing is that the Ninth Circuit, a decision of the Ninth Circuit would normally trump a decision of the Board of Immigration Appeals. And as I said, the Ninth Circuit had decided twice that my client was eligible for adjustment of status. You mentioned twice. One was Acosta. What was the other one? Perez-Gonzalez. That was back in 2004. So... Counsel, was Acosta settled law at the time your client applied? Well, there were Board of Immigration Appeals decisions that were contra. There was one, in fact, that was just Torres-Garcia, which was just a month before, but the Ninth Circuit, when they decided Acosta, did not refer to that case or did not mention that case. What I would assume, at the time I wasn't representing Mr. Acosta, the petitioner, but had I been representing him at that time, I would have thought that normally what happens at a Ninth Circuit, if it's a question of law, then the Board of Immigration Appeals interpretation would apply outside of the Ninth Circuit, but within the Ninth Circuit, the decisions of the Ninth Circuit would be the law. I guess what I'm saying is you contend that your client was reasonably relied on Acosta versus Gonzalez, but Acosta versus Gonzalez was on petition for rehearing, was it not? It may have been. I'm not sure about that. The petition for rehearing wasn't rejected until July 6th of 2006, and the mandate didn't issue until later. Okay, well, but my client applied for adjustment of status on July 12th, 2006, in removal proceedings, so that would have been after the time for petition for rehearing had expired. He applied on July 12th, 2006, in front of the immigration judge, and then the immigration judge granted his application December 8th, 2006. But I guess you're saying he reasonably relied on a case that wasn't settled at the time he applied. He applied and crossed his fingers, hoping that the state of the law would remain. Well, but there was also even prior to Acosta, there was Perez-Gonzalez back in 2006, which also held that folks inadmissible under 1182A9C could still apply for a penalty fee adjustment of status. So I think that the law was a lot more settled at that time than the government is arguing. I practice immigration law, and I know that at that time we were applying for adjustment of status for clients in the same situation, and we thought the law was settled. We're attorneys. We thought the law was pretty settled. I did. And it came as a surprise when the  judge said that. But I do believe that if you look at the factors, and especially, you know, the burden that one of the factors in Montgomery Ward is the degree of the burden which the retroactive order would impose. In this case, it's been almost 10 years now since an immigration judge at least decided that my client was eligible for adjustment, and the case was appealed to the Board of Immigration Appeals. But the government, interestingly enough, in their brief to the Board of Immigration Appeals after my client was granted adjustment of status, did not even challenge Perez-Gonzalez and Acosta. I think that's very, very interesting that they've appealed the decision on other grounds. They said that the IJ immigration judge abused his discretion in granting adjustment of status, but they didn't challenge the validity of Perez-Gonzalez and Acosta in their brief to the Board of Immigration Appeals. And this was after the Board of Immigration Appeals had made a decision stating that that was contra. It was against Acosta. Could I just make sure I understood the exchange about the dates? So did he apply for adjustment of status after the petition for rehearing was denied or before? I'm just a little bit confused about that exchange. He applied for adjustment of status July 17th, 2006, when he actually submitted his application in immigration court. And so, sorry, when was rehearing denied then? It was July 6th. Mandate issued July 14th. So three days after the mandate issued, he filed his adjustment of status. That's right. You were just mentioning other people who were in this 21-month period that Garcias-Rodriguez talks about. Do you have a sense of how many petitioners are in this situation that your client is in? I would guess that there are at least thousands, but there was a class action settlement. I forgot your honor, that will allow certain people that were denied adjustment of status based on the overruling of Perez-Gonzalez to reopen their cases before Citizenship and Immigration Services. However, the class action does not cover my client. It does not cover people that are already in the Ninth Circuit. Oh, it's only for outside the Ninth Circuit? It's for people that are outside. It's pretty complicated, but it doesn't cover people that have a petition for review pending. Folks that are going to apply under this class action settlement still have to go before the Immigration Service and prove under the Montgomery Ward test that they're entitled to not have Garcias-Rodriguez apply retroactively to them. And if my client were not here on a petition for review, he would seek that type of relief. But I think that the facts of his case are pretty unique. I mean, the immigration judge granted his application. The government did not challenge Acosta and Perez-Gonzalez. At least they didn't say that those cases were not good law. And so my client had a reasonable reliance. The deportation would cause him an enormous burden. He's got a wife that's a United States citizen. He's got three children that are United States citizens. And he's been in this country a long time. And his only criminal conviction is a misdemeanor? Yes. That was a domestic violence. But when the board reversed on February 15th, 2008, it cited Briones. Isn't that correct? Which is following its line of cases, the Torres-Garcia and other cases that implicitly, if not explicitly, reject Perez-Gonzalez and Acosta. Yeah, the Board of Immigration Appeals Suas-Ponte did cite that case, Your Honor. The government didn't urge them to, but the Board of Immigration Appeals did bring that case up. Yes, they did. Well, wasn't it obliged to? Well... If they don't have statutory authority, they need to act with statutory authority. Well, I think that I would argue that at that point they should have... Well, at that point the Ninth Circuit cases had been overruled, so I suppose that they had to do that. But they should have engaged in a retroactivity analysis, I believe. And that's my last point, Your Honor. That brings me to my last point, since I'm almost out of time. If the court feels it necessary to develop the record, the court could remand the case so we could have the Board of Immigration Appeals or an immigration judge take evidence on the issue of reliance and the Montgomery Ward factors. Do I understand your position to be, though, that we already know enough about that? So if we agree with you, we should just reinstate the IJ's decision at this point? I guess what I'm saying is I think we know enough about it, but if the case were remanded, I believe that we could develop even more evidence to show reliance. I agree, Your Honor. I believe the record is probably sufficient, but we could do even better if we had a chance. All right. I guess I'm out of time. Can I keep talking, or do I just... No, you're out of time, but we'll give you a minute for rebuttal. Thank you, Your Honor. Thank you. One of Your Honors, it may please the Court, Ida Diacon on behalf of the Respondent Attorney General. In Garfious, this Court joined several other courts of appeal in determining the deferences due to the Board's decision in matter of Brionis under Chevron and Brand X. The Board also determined that retroactive application of Brionis was proper based on consideration of the five-factor test set forth in Montgomery Ward. Attempting to factually distinguish his case from the case of Garfious, the petitioner in the instant case seeks a carve-out. He asks the Court to treat him differently than the vast majority of recidivist immigration violators who applied for penalty fee adjustment of status. Such a request is without merit, and it's not supported by the Montgomery Ward analysis. But isn't he exactly in the 21-month period contemplated by Garfious? He is in that 21-month period. However, the question of what happens to those applicants for penalty fee adjustment of status was not before the Court in Garfious. And, in fact, even the Court in Garfious agreed that in such a case it might not be reasonable to rely. There are two contradictory statements in the Garfious decision, the first indicating that perhaps reliance would be reasonable, but then indicating that even during that period it wouldn't necessarily come as a surprise. To answer this, it's worth noting that there are three Montgomery Ward factors which are not at issue in this case. The parties agree that the first factor is not at issue because it's not well suited to immigration cases. Respondent agrees that the fourth factor strongly favors the alien, and in Garfious the Court concluded that the fifth factor favors the government, and the petitioner doesn't argue otherwise. So, at its core, this case is about the second and the third Montgomery Ward factors. And as set forth in Respondent's supplemental brief, both of those factors favor the government in this case. Contrary to the petitioner's claim, the Board's decision in Briannus did not amount to an abrupt departure from a well-established practice, and instead amounted to an attempt to fill a void in an unsettled area of law, such that Briannus could not have come as a complete surprise to the petitioner or others in his situation. As this Court explained in Garfious from the outset, the tension between Section 212A9C and 245I was obvious, and this led to a lengthy, multi-year discussion between the Board and this Court. Mr. Acosta's argument that the law was unsettled at the time of his July 2006 application for adjustment of status is far from accurate. He argues that the law was settled, not unsettled, right? He argues that it was settled, and that's far from accurate. Such was the case because in July 2006, at the time of his application for adjustment of status, the Court's decisions in Perez-Gonzalez and Acosta were both subject to revision by this Court under Chevron and Brand X, and the Board had consistently taken a position contrary to those taken by this Court in Perez-Gonzalez and Acosta. In fact, just one month before this Court issued its Acosta decision in February 2006, and three days before a petitioner was placed in removal proceedings, the Board issued its decision in Torres-Garcia, in which the Board addressed the shortcomings in the analysis identified by this Court in Perez-Gonzalez. Acosta made no mention whatsoever of Torres-Garcia and instead relied primarily on the reasoning set forth in Perez-Gonzalez. The Court's apparent failure to consider Torres-Garcia in its Acosta decision would have placed any applicant for adjustment of status on notice of Acosta's vulnerability. But isn't that totally unrealistic? I mean, doesn't that impute a level of following the law of the BIA and our Court beyond what is reasonable? Shouldn't it be that people are only responsible for knowing the law of the circuit that they're in? That's already probably more than they realistically actually know. To an extent, that might be accurate. But in this case, the applicant was represented by counsel. And if the Court looks at the Perez-Gonzalez decision from 2004, this Court rejected the Board's analysis because it was based on an INS memorandum. And the Board found that the regulations and the statute were irreconcilable, and so the Court deferred to the regulations as being reasonable as opposed to the INS memorandum and said that the Board, of course, is free to present a sufficient analysis. But that's blaming our Court for getting it wrong. I mean, why can't Petitioner rely on what our Court has said? If our Court got it wrong, how can he be blamed for that? He can rely on it, but the question is, for the retroactivity analysis, whether such reliance is reasonable. And in this case, because the vulnerability of Acosta was so clear in light of the failure of Acosta to consider Torres-Garcia. And additionally, it's worth noting that there was a circuit split at the time that Acosta was issued. The Fifth Circuit had issued a decision coming out completely on the opposite side on the question of whether an alien who's inadmissible under 212A9CI1 is eligible for penalty fee adjustment of status. And so the failure to consider the Board's reasoned interpretation in Torres-Garcia. But, I mean, do we have any case that says if our Court has decided a case in a way that's inconsistent with the Fifth Circuit, the district courts in this circuit shouldn't follow our circuit because the Fifth Circuit disagrees and maybe cert might be granted someday? I mean, that's just not the way that anything works. That's correct. It's only to say that the law was unsettled at the time. There was a lot of uncertainty because of this back and forth. The Board had consistently taken the position that aliens who are inadmissible under 212A9C are ineligible for penalty fee adjustment of status. Now, the Ninth Circuit had come out one way with regard to 212A9CI2 in Perez-Gonzalez, and then later in Acosta with regard to 212A9CI1, the provision which Mr. Acosta in this case is inadmissible under. So there certainly were Ninth Circuit decisions. But again, Brand X, 2005, the Supreme Court comes out with a decision. And Petitioner, who was represented by counsel, should most certainly have been aware of Brand X. I don't think that's too much to ask. How does Brand X affect this? Because once the agency goes back and provides an analysis, so long as the previous court decision, the Ninth Circuit, is not based on an unambiguous language of the statute, the Board's decision trumps under Brand X. But it didn't trump until Garfias-Rodriguez, right? That's correct. And that is one of the points that was made in Garfias. And Garfias-Rodriguez, what year was that? That was 2013. Garfias was 2013. 2012. So for six years between the application by Mr. Acosta-Olivarria until Garfias came out, the law was in the petitioner's favor. Yes. However, in Garfias, the court concluded that after Briones came out in 2007, certainly a petitioner would be on notice of the vulnerability of Acosta. His position is that had he known that the Ninth Circuit, seven years in the future, or six years in the future, was going to undermine Acosta and Perez-Gonzalez, he would have left the country and started a 10-year period of exile so that he could then apply for adjustment of status. But since he was relying on the law of the Ninth Circuit in two cases, Perez-Gonzalez and Acosta, he applied for adjustment of status. You're saying, ah, but that's not good enough for me because he should have foreseen the six years that Hans Garfias would come along and say, yes, the Immigration Service is right in Briones, and Acosta and Perez-Gonzalez are wrong. That's a big crystal ball for an immigrant to have, isn't it? In this court's decision, Carrillo de Palacios, the court considered the case of an applicant who was inadmissible under 212A9CI2, the companion provision, and concluded that in a case where an alien applied for adjustment after Torres-Garcia, the reliance wasn't reasonable. So we have 212A9CI1 in this case, but the argument that he reasonably relied on Perez-Gonzalez post-Torres-Garcia is without merit, because Torres-Garcia clearly placed any applicant on notice that Perez-Gonzalez was vulnerable, in the same way that Briones placed any applicant on notice that Acosta was vulnerable. The question presented in this case is... This is a period which is discussed in dicta in Garfias, the period between Acosta and Briones. The question is whether reliance is reasonable in that time period. So your position is that a reasonable alien who is following 9th Circuit Court law should see the handwriting on the wall in Briones and depart and start his 10-year period and leave his wife and children behind? Even though Briones hadn't been decided yet. The position is that reliance wasn't reasonable under the Montgomery Warden analysis. What he should have done was his choice, but if Correo de Palacios holds that reliance is not reasonable... You keep saying not reasonable. What's unreasonable about an alien relying on 9th Circuit Court law? Not editorializing here. Is that unreasonable to rely on the 9th Circuit? After the board had come out with Torres-Garcia, certainly the writing was on the wall. This is what Judge Kaczynski says in his concurrence in Garfias. No one should have been surprised by the interpretation announced in Briones. And that's because it was clearly foreshadowed by the board's decision in Torres-Garcia. And this petitioner applied after Torres-Garcia. And because we recognize that these two companion provisions, 212A9CI1 and 2, are so similar and to be treated similarly, they were by this court, the decision of the board in Torres-Garcia certainly placed the petitioner on notice that Acosta was vulnerable. And in light of Brandeis, the circuit split regarding the issue of inadmissibility and 245I, adjustment of status, all of these factors put together could certainly have placed any reasonable applicant on notice, especially one represented by counsel. But hasn't this court already considered this question of the 21-month period and said that there could be reliance during that period? I mean, this is a well-reasoned discussion about this 21-month period, and he falls directly in it. How can we as a panel ignore what has been said before by this court about this? In Garfias, the court did state in dicta that during that 21-month period there could be reasonable reliance. But recall that Garfias applied for adjustment of status initially in 2002 before Perez-Gonzalez and before Acosta, and the court concluded that there was no reliance in that case because his application came before any Ninth Circuit decision. And so the court didn't have before it the question. So our en banc court thought it was important enough to have this discussion to foresee this case, and you're telling us as a panel we should ignore what the en banc court collectively decided about this issue or at least discussed about this issue? It's not binding on this panel to the extent that it's dicta in the Garfias decision. I think that you're mistaken, Mr. Cohen. In the Ninth Circuit, we have a rule that well-reasoned dicta is binding as precedent. I may be not aware of that. Your Honor, it's a case-by-case analysis. No, no, no, no. It's not a case-by-case analysis. We have rules in the Johnson case that well-reasoned dicta, something other than a passing mention, is precedential in the Ninth Circuit. Forgive me, Your Honor. What I meant to say was that it's a case-by-case analysis when determining under Montgomery Ward whether the application of bryonis retroactively is appropriate. And in Garfias, the court also made note of the fact that it wasn't a pining on whether any other individual might be eligible. This is at the end of the Garfias decision. There's a footnote. Footnote 13, we expressed no opinion whether other applicants may avoid the retroactive effects of bryonis. And so the en banc panel also wanted to make clear that it was certainly not a pining on. I don't hear you making any individualized argument other than to say no one in the 21-month period could view the law as settled. And I think that Garfias said the opposite. As just a general matter about the 21-month period, Garfias said you might have reliance during that period. And your argument is not that this petitioner hadn't heard of the prior law or something individualized. As you're saying, as a general matter, this 21-month period, there can be no reliance because the law was unsettled. In Garfias, the court did indicate that perhaps there could be reliance during that period. However, it wasn't considering that question. In this case, the court is considering that question. But you're just saying we should ignore that dicta. Again, this is that problem. Just reiterating that a carve-out should not be made for individuals in this situation and that the retroactive application of bryonis is appropriate in these circumstances as well. All right. I think you're over your time. Thank you very much, Mr. Cohen, for a very good argument. Mr. Finn, you have a minute for rebuttal. Thank you, Your Honors. The only thing I want to say is regarding the Brand X case, the Supreme Court case that counsel mentioned. That case was decided in 2005. But quoting from that case, that case instructed federal courts to defer to reasonable agency interpretations of ambiguous statutes. And I think that Garfias-Rodriguez did find that the agency interpretation was reasonable. Maybe not the best interpretation. I don't think it's the best interpretation. But they found it reasonable. So under Brand X, they had to defer to that interpretation in Garfias. But there was no guarantee that the Garfias court was going to find that interpretation to be reasonable. So if counsel argues that we should have been aware of Brand X, it was out there. But there was no guarantee that the court in Garfias was going to follow Brand X in finding the Board of Immigration Appeals interpretation of this statutory scheme that had been, at least in some flux for many years, would be reasonable. And, in fact, the decision wasn't unanimous from this court. It was divided on Bonk-Finn. It was not, Your Honor. Thank you very much, Mr. Finn. Thank you very much for a good argument. All right. Ladies and gentlemen, this case of Acosta-Olivarria versus Lynch is mark submitted. And we'll go to the next case.
judges: Bea, Friedland, Rice